## DEARDEN v CITY OF DETROIT

1. PRISONS—DEPARTMENT OF CORRECTIONS—ZONING—DISREGARDING
   ORDINANCES—FULFILLMENT OF DUTIES—INHERENT POWERS.

   The statutorily granted authority of the Department of Correc-
   tions does not per se allow it to disregard city ordinances; the
   agency should operate in accordance with local zoning regula-
   tions whenever it is possible to do so and still reasonably fulfill
   its duties (MCLA 791.201 *et seq.;* MSA 28.2271 *et seq.).*

2. ZONING—STATUTES—CONFLICT—EFFECT.

   A zoning ordinance in conflict with a statute cannot be given
   effect.

3. ZONING—EXCLUSION OF AGENCIES—LEGISLATURE.

   Zoning ordinances may not be used intentionally to exclude from
   the use of real property an agency the Legislature has created.

4. ZONING—NONCONFORMING USES—CONTINUATION—SAME NATURE—
   REHABILITATION CENTER—CONVENT.

   The continuation of a nonconforming use must be substantially of
   the same size and same essential nature as the use existing at
   the time of passage of a valid zoning ordinance; a rehabilitation
   center for male convicts requiring full-time supervision, polic-
   ing, job training, counseling and detention or incarceration
   does not have substantially the same nature as a women's
   religious convent.

5. ZONING—BOARD OF APPEALS—RECORD—SUBSTANTIAL EVIDENCE—
   APPEAL AND ERROR.

   A decision of the Board of Zoning Appeals which is supported by

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 379 *et seq.*
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 374 *et seq.*
[3] 82 Am Jur 2d, Zoning and Planning §§ 7–10.
[4] 82 Am Jur 2d, Zoning and Planning §§ 195–207.
[5] 82 Am Jur 2d, Zoning and Planning §§ 61–65.

competent, material and substantial evidence on the whole record will not be disturbed on appeal.

Appeal from Wayne, Blair Moody, Jr., J. Submitted December 9, 1975, at Detroit. (Docket No. 23431.) Decided July 20, 1976. Leave to appeal applied for.

Complaint by John F. Dearden, Archbishop of the Roman Catholic Archdiocese of Detroit, and by St. Theresa's Roman Catholic Convent against the City of Detroit and the Board of Zoning Appeals for an order of superintending control. Intervention by the Department of Corrections as a plaintiff. Judgment for defendants. Plaintiffs appeal by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Solomon Bienenfeld,* First Assistant Attorney General, and *John D. Pirich,* Assistant Attorney General, for intervening plaintiff.

*Kermit G. Bailer,* Corporation Counsel, and *John F. Hathaway* and *William B. Beach,* Assistants Corporation Counsel, for defendants.

Before: V. J. Brennan, P. J., and R. M. Maher and G. W. Britten,* JJ.

G. W. Britten, J. The plaintiff archdiocese owns a building in Detroit that was used from 1938 to 1971 as a convent. The building is located in an area zoned R-2 (two-family residences), but its use as a convent was allowed as a nonconforming use after the defendant city adopted its zoning ordinance in 1940. In January, 1971, the archdiocese

---

* Circuit judge, sitting on the Court of Appeals by assignment.

leased the building to intervening plaintiff, the Michigan Department of Corrections, for use as a rehabilitation center. In June, 1971, the archdiocese applied to the Department of Building and Safety Engineers for permission to use the building as a rehabilitation center housing approximately 30 convicts. The department denied the application because approval of the Board of Zoning Appeals is required under the zoning ordinance whenever a change in nonconforming uses is sought. Additionally, a variance is necessary for the use of property in an R-2 district for a correctional institution.

After a public hearing, the Board of Zoning Appeals denied the archdiocese's petition to reverse the decision of the Department of Building and Safety Engineers. The archdiocese then filed a complaint for superintending control in Wayne County Circuit Court. The Department of Corrections intervened as plaintiff. The court affirmed the Board of Zoning Appeals' decision.

This Court granted the Department of Corrections' delayed application for leave to appeal the decision of the circuit court.

The department's first argument is that, as a state agency, it is immune from the requirements of Detroit's zoning ordinances. Detroit counters this argument by asserting that immunity does not extend to the department as lessee.

In many jurisdictions, the notion of governmental immunity from local zoning regulations is well-established. "A public corporation or authority created by the state to carry out a function of the state is not bound by local regulations." 2 Anderson, American Law of Zoning, § 9.06. See also, 8 McQuillin, Municipal Corporations, § 25.15. There is no clear pronouncement by a Michigan court

that governmental agencies are inherently exempt from local zoning ordinances.

In *State Highway Commissioner v Redford Township,* 4 Mich App 223; 144 NW2d 690 (1966), the defendant township, while conceding that its zoning ordinance was unenforceable against state-owned land, attempted to rezone the unused portion of land from a highway project. This Court rejected the argument that the restrictions would be valid against any subsequent purchaser. This Court in *Haring Township v City of Cadillac,* 35 Mich App 260; 192 NW2d 384 (1971), cited *State Highway Commissioner v Redford Township* for the general proposition that township zoning ordinances do not affect state-owned land. Nevertheless, the city of Cadillac was not allowed to use state land in Haring Township for landfill purposes because Haring Township's zoning ordinance prohibited the storage of garbage except by the township or its agents. "The statute [MCLA 325.292; MSA 14.435(2)] of the State of Michigan and the rules promulgated by the Department of Natural Resources mandate compliance with local ordinances." 35 Mich App at 263.

In *Taber v Benton Harbor,* 280 Mich 522; 274 NW 324 (1937), the Supreme Court held the defendant city could not erect a water tower prohibited by its own zoning ordinance. Since the Court emphasized that the maintenance of a water works was a proprietary function, *Taber* could be taken as indirect authority for finding an exemption from zoning laws when a governmental function is involved. The governmental-proprietary distinction is frequently made in this area, but it has been property criticized as simplistic and mechanical. Note, *Governmental Immunity from Local Zoning Ordinances,* 84 Harv L Rev 869 (1971).

Strongly suggestive of the idea that governmental agencies cannot disregard local zoning regulations is *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969). In that case Wixom amended its zoning ordinance to prohibit utility towers over 100 feet high. The State Public Service Commission approved a Detroit Edison power line passing through Wixon, but the commission regulations required towers at least 130 feet high. Though the court recognized the interest of the commission, it thought that the city had an interest in the location of the power line that was not preempted by the legislative grant of authority to the commission.

Of course, the Legislature in creating the Public Service Commission could have endowed it with the power to contravene local ordinances. A zoning ordinance in conflict with a statute cannot be given effect. *In re Petition of Detroit,* 308 Mich 480; 14 NW2d 140 (1944). In *Renshaw v Coldwater Housing Commission,* 381 Mich 590; 165 NW2d 5 (1969), the action of a municipal housing authority in providing low income housing was challenged as contrary to the city's zoning ordinance. The Court looked to the statutes authorizing the city to zone and to create a housing authority. The legislative intent, the Court found, was for the local zoning ordinance to be subordinate to the powers granted the housing authority.

The dispute before us presents a conflict between the Department of Corrections' statutory authority to supervise the state's penal institutions, MCLA 791.201 *et seq.;* MSA 28.2271, *et seq.,* and Detroit's authority, similarly granted by statute, MCLA 125.581, *et seq.;* MSA 5.2931 *et seq.,* to regulate the use of land within its boundaries. We take the issue to be not one of absolute governmental im-

munity but rather of legislative intent governing the exercise of different aspects of the state's police power.

Unfortunately, the legislation on the authority of the Department of Corrections does not indicate whether or not the department, in fulfilling its assigned duties, is to be subject to local ordinances. Similarly, the statutes under which Detroit has enacted its zoning ordinances do not disclose what effect, if any, a zoning ordinance should have upon the activities of state agencies.

We agree with the department that operation of the corrections system is a matter of state concern, but the Legislature's action in the area of zoning indicates that municipal land use regulation is also a matter of state concern. The state-wide authority of the department does not, per se, allow it to disregard city ordinances. Both the defendant and the city seek to advance significant interests. *Cf. Detroit Edison Co v City of Wixom, supra.*

We think that, in the absence of any clear pronouncement that either the involved agency or the zoning ordinance deserves preference, it must be the intent of the Legislature that the agency, whenever it is possible to do so and still reasonably fulfill its duties, should operate in accordance with local zoning regulations. Where the function performed by the agency is deemed so important that local concerns should in no way hinder it, the Legislature can so state.

"Since it is reasonable to presume that the legislature intended a balanced viewpoint to control in cases of conflict, it would seem that an agency's power to conduct a state function is not a license to disregard local zoning restrictions, but authorization to operate in accordance with them. This construction, when accompanied by the power of the state agency, like any private

amendment, accommodates municipal interests without unduly interfering with agency performance of statutory responsibilities. Furthermore, since the legislature has failed to deal explicitly with this area, it seems justifiable to place upon it the burden of reversing a reasonable presumption as to what its intent would be." Note, 49 Minn L Rev 284, 298 (1964).

The facts of this case do not require us to determine whether the power of eminent domain is inherently superior to the power to zone.

Of course, the power of a municipality to zone is not the power to prohibit. With our emphasis on legislative intent, we could not sanction the use of zoning to exclude an agency the Legislature has created. *Gust v Canton Township,* 342 Mich 436, 439; 70 NW2d 772 (1955). Detroit's ordinance permits correctional institutions in a B-6 district.

We, therefore, hold that neither the department nor its lessor can in this instance invoke inherent immunity as a basis for avoiding Detroit's zoning regulations.

The department's next contention is that the circuit court erred in concluding that the department's use of the property as a rehabilitation center was a different nonconforming use from that of a convent and therefore required a variance. Emphasized in this argument is that the structure continues to be used as housing for approximately 30 unrelated individuals.

As this Court has previously stated, "it is the law of Michigan that the continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a valid zoning ordinance". *White Lake Township v Lustig,* 10 Mich App 665, 674; 160 NW2d 353 (1968). We agree with the trial court's finding that the nature of the use has been

expanded. As the court's opinion points out, "the state's use as a correctional facility has incorporated of necessity into the use of the building full time supervision of the men, the policing of same, the bringing of known felons into the residential district, job training and counseling as well as normal detention or incarceration aspects associated with such institutions". This does not describe a convent. Housing is but one aspect of the use proposed by the department and does not define the essential nature of a correctional institution.

The department's final argument is that the court erred in upholding the Board of Zoning Appeals' denial of a variance. Section 62.0403 of the Detroit Zoning Code provides:

"The board may vary the requirements of this ordinance in cases where strict application of the provisions hereof will result in practical difficulty or unnecessary hardship that would deprive the owner of reasonable use of land or building involved. Such variance shall be granted only in cases of property having unique characteristics which prevent reasonable use of the property as zoned.

"A variance shall not be granted unless the board finds, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with the existing zoning, and before the board may exercise its discretion and grant a use variance on the grounds of unnecessary hardship, the record must demonstrate:

"(a) That the property in question cannot be reasonably used only for a purpose permitted in that zone, and

"(b) That the plight of the owner is due to unique circumstances and not to general conditions in the neighborhood, and

"(c) That the use to be authorized by the variance will not alter the essential character of the locality."

The board's decision on whether these requirements are met must be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Beatrice Block Club Association v Facen,* 40 Mich App 372; 198 NW2d 828 (1972). Our review leads us to agree with the trial court that the board's denial of the request had ample support in the record before it.

Affirmed, no costs, a public question being involved.